IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DMARC ADVISOR BV, *Petitioner*, v. BLANK ROME LLP, *Respondent*. | No. 23-mc-0144 |

**RESPONDENT BLANK ROME LLP'S SUR-REPLY IN FURTHER OPPOSITION TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Respondent BLANK ROME LLP ("Blank Rome" or "BR" or "Respondent") respectfully submits this Sur-Reply in Further Opposition to the Motion to Compel Compliance with Subpoena filed by Petitioner DMARC ADVISOR BV ("DMA" or "Petitioner").

Besides failing to respond to numerous factual and legal points Blank Rome made in its Brief in Opposition to enforcement of the subpoena ("BR Opp. Br."), DMA's reply fails to support enforcement because: (a) DMA continues to conflate contributions of ***non-copyrightable*** code with contributions of ***copyrightable*** code, and additional Tim Draegen testimony submitted with this sur-reply confirms that context; thus, there is no set of facts to establish that dmarcian made intentionally false statements to the copyright office; (b) DMA fails to respond to BR's at-issue response, thereby waiving its at-issue argument; and (c) DMA cannot block transfer of the matter to the issuing court (Western District of North Carolina ("WDNC")) (if the motion is not first outright rejected), as the rule contemplates that determination being made as part of the motion process, and BR's pre-motion position that initial enforcement should be sought here does not alter that result.

1

**I.      DMA's Reply Again Fails to Establish that the Crime-Fraud Exception Applies**

*First*, in its Reply, DMA contends that the crime-fraud exception applies because Mr. Draegen's November 27, 2023 deposition testimony establishes that dmarcian fraudulently listed Mr. Draegen as the author of the code. Specifically, DMA argues that Mr. Draegen's statements during a deposition that "you can't say one person" wrote the Stolen Code[1] and the Stolen Code "reflects the collaborative nature of software development" somehow prove that Mr. Draegen is not the (or the only) author of the Stolen Code for purposes of copyright law, thereby rendering the application "false." *See* DMA Reply, ECF No. 9 at 4-6. Not only does this argument baldly misrepresent Mr. Draegen's testimony, but it also once again demonstrates DMA's failure to apprehend the distinction between *copyrightable* and *non-copyrightable* material.

dmarcian has *never* contended that Mr. Draegen is the *only* person who contributed to the Stolen Code. Rather, dmarcian has contended that Mr. Draegen was the sole contributor and author of *copyrightable* material in the Stolen Code. Mr. Draegen confirmed these points on redirect in his deposition. *See* Supplemental Declaration of David A. Dorey ("Dorey Supp. Decl."), **Ex. 4**, Tim Draegen Dep., 11/28/2023 Dep., 299:13-302:21 (a developer's "commit" or change can involve even just adding a space; contributing lines of code does not equate to creative expression necessary to create copyrightable material). And that is consistent with Judge Reidinger's ruling that DMA failed to establish that any of its alleged contributed code was *copyrightable*; only authors of copyrightable code (i.e., Tim Draegen) are listed as authors in a copyright registration. BR Opp. Br., ECF No. 7 at pp. 7-8.  Draegen distinguished simple mechanical code changes from

---

[1] Keep in mind the registered "Stolen Code" is the full source code for the program. The copyright office Deposit is only 20 selected pages of that code. Thus, references to Tim Draegen as the author of the registered Stolen Code's copyrightable material refers to the copyrightable material in the entire source code for the program, and is in no way limited to the Deposit.

the type of *creative* code changes that can qualify for copyright protection. He said (with emphasis, as set forth in summary format in Dorey Supp. Decl., **Ex. 4** at 299:22 – 301:4):

```
22   Q.  And as others rename and refactor the
23   code, does that change the names on the commits?
24   A.  It does.
25   Q.  If you make an indent or add a space,
                                              Page 300
 1   does that change the name on the commits?
 2   A.  It does.  The tool itself is rather
 3   primitive.  It looks at just changes of lines
 4   regardless of the -- it doesn't consider any
 5   meaning.  So a space that gets inserted will cause
 6   the line to be attributed to the person that made
 7   their change.  So you are accurate in your
 8   assessment.
 9   Q.  Is that part of the reason your name
10   wouldn't show up on the commit?
11   A.  It is.

12   Q.  Does the fact that a commit is identified
13   to a particular person, does that mean they made a
14   creative contribution evidenced by that commit?
15       MR. HARTZELL:  Objection to form.
16   A.  No, it does not.
17   Q.  Why not?
18   A.  The idea of a creative contribution
19   carries with it the notion that an individual has
20   to be expressing themselves in their own creative
21   way, and based upon that, that creative expression
22   can be further manipulated or modified by others,
23   but that doesn't mean their modifications
24   establish the new creative act.
25       If it weren't otherwise, we'd live in a
 1   different world where anybody can claim
 2   intellectual property over other's intellectual
 3   property by changing something that is relatively
 4   insignificant.
```

This reaffirms Judge Reidinger's point that even if Draegen did not write the Deposit code (the 20 pages from the registered work deposited with the copyright office), that does not "preclude him from being the sole author of the *copyrightable content* of the [registered work] file." BR Opp. Br., ECF No. 7 at 8 (emphasis in original).

*Second*, DMA unconvincingly argues that the crime-fraud exception applies because dmarcian's supplementary registrations falsely and repeatedly stated the date of completion was 2012, until the last supplement when it was changed to 2021 based on the copyright office's guidance. *See* BR Opp. Br., ECF No. 7 at 9-10. From the outset of the underlying litigation, dmarcian has been fully transparent—to Judge Reidinger, the Copyright Office, and this Court, as well as to DMA—and consistent; Dmarcian registered the Stolen Code, i.e., the code as it existed

in 2021.[2] As the Register of Copyrights' October 16, 2023 opinion and guidance make clear, dmarcian's initial errors regarding dates of completion and publication were not "fraud," but rather—to the extent that the listed completion and publication dates did not align with the then-existing version dmarcian filed in February 2021—they were technical foot faults that dmarcian was invited to correct, devoid of any intent to mislead (a point DMA fails to address). *See* Register of Copyrights' Resp., Ex. A to Hartzell Decl., ECF No. 2 at 54-55. Accordingly, dmarcian's latest supplementary applications correcting the dates of publication (Hartzell Decl., ECF No. 2, Ex. B at DM 9982-9984) and completion (Dorey Decl., ECF No. 7-4, Ex. 3) confirm that dmarcian's registration is valid and complete and DMA simply has ***no grounds*** to claim dmarcian committed any "crime."

## II. The At-Issue Doctrine does not Apply

As in its opening motion to compel compliance with this subpoena, DMA neither addresses nor satisfies the standard for meeting the at-issue exception. DMA failed to address in its reply BR's legal arguments that: (a) targeting a party's counsel for privilege-invasive discovery is disfavored, and (b) even then, waiver is a last resort, and can be triggered in limited fashion only if DMA cannot discover what it thinks it needs from other sources. BR Opp. Br., ECF No. 7 at 17-19. Nowhere does DMA suggest that it could not obtain the information it needs to address dmarcian's copyright infringement claim from sources other than attorney-client privileged documents, and it has taken multiple depositions since it filed its motion.. As a result, the at-issue waiver argument fails.

---

[2] Notably, DMA failed to respond to BR's point that as early as April 2021 during the WDNC's injunction hearing, dmarcian has been clear that it registered the source code from the "current version" (i.e., February 2021) of the platform. BR Opp. Br., ECF No. 7 at 4. DMA's reply further left unrebutted the copyright office's allowance of record correction through a filed supplement which resolved the date of completion issue. *Id.* at 1, 10.

### III. DMA's Reply Fails to Contest dmarcian's Showing that Transfer is Warranted

Finally, DMA cursorily mentions that Blank Rome's argument suggesting this Court should transfer the Motion to the Western District of North Carolina "bear[s] no merit" because Blank Rome "previously insisted [in a letter to DMA] that 'any motion practice regarding the Subpoenas . . . should occur in the United States District Court for the Eastern District of Pennsylvania.'" DMA Reply, ECF No. 9 at 3. This argument is non-responsive and ignores the plain text of Rule 45. Contrary to DMA's assertion, Blank Rome did not "choose" this forum; rather, DMA did by choosing to serve the subpoena in Philadelphia. Blank Rome's letter merely reminded DMA that "Rule 45(d)(2)(b)(i) requires that any elective motion to compel compliance be brought in the district where compliance is required." *See* September 5, 2023 Letter from Blank Rome, Ex. E to Hartzell Decl., ECF No. 2 at 140-41. In other words, by choosing to serve this subpoena upon Blank Rome in Philadelphia, DMA also chose to subject itself to Rule 45's requirement that it file any subpoena-related motions in this Court. Moreover, as DMA ignores in its Reply, Rule 45 plainly permits the Court to transfer this Motion: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court." Fed. R. Civ. P. 45(f). Thus, Blank Rome's statements in a letter predating this Motion are simply irrelevant to whether this Court has the authority to transfer this Motion under Rule 45.

Accordingly, DMA's Motion to Compel should be transferred, if not in the first instance, rejected.

Respectfully Submitted,

Date: December 15, 2023    By:   */s/ David A. Dorey*
David A. Dorey (PA ID No. 47358)
Blank Rome LLP

        1201 N. Market Street, Suite 800
        Wilmington, DE 19801
        T:  (302) 425-6400
        F:  (302) 425-6464
        david.dorey@blankrome.com
        *Counsel for Respondent*
        *Blank Rome LLP*

1

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 15th day of December, a copy of Respondent BLANK ROME LLP's Sur-Reply in Further Opposition to the Motion to Compel Compliance with Subpoena filed by Petitioner DMARC ADVISOR BV was filed electronically with the Electronic Court Filing (CM/ECF) system of the United States District Court of the Eastern District of Pennsylvania, which will provide an electronic notice and copy to all counsel of record.

                                                                                      */s/ David A. Dorey*
                                                                                        David A. Dorey, Esq.